Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9339 | **DATE** | 6/25/2003 |
| **CASE TITLE** | Ishkhanian vs. Forrester Clinic | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  For the reasons set forth on the attached order, the Court denies defendants' motion to dismiss Counts 3, 8, 9, and 12. Defendants are ordered to answer those claims within 7 days of this order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 3 0 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 23 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | U.S. DISTRICT COURT | date mailed notice | |
| OR6 | courtroom deputy's initials | 03 JUN 29 PM 1:42 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LIA ISHKHANIAN, )
)
        Plaintiff, )
)
vs. ) Case No. 02 C 9339
)
FORRESTER CLINIC S.C. d/b/a )
LIPOSUCTION AND COSMETIC SURGERY )
INSTITUTE; LEON TCHEUPDJIAN )
FORRESTER; and LESLIE FORRESTER, )
)
        Defendants. )

DOCKETED
JUN 3 0 2003

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Lia Ishkhanian began working at the Liposuction and Cosmetic Institute ("LCS") in October, 1999. Dr. Leon Tcheupdjian Forrester is the owner and principal of LCS. Initially, Ishkhanian performed receptionist duties, but in early 2000, she became a consultant, selling liposuction procedures for LCS. Ishkhanian resigned from LCS around October 1, 2001. She claims she was forced to resign due to ongoing sexual harassment by Tcheupdjian.

Ishkhanian has sued LCS, Dr. Tcheupdjian, and Leslie Forrester, an employee of LCS. Her amended complaint includes fourteen claims. Count 1 alleges sexual harassment and the creation of a hostile work environment. Count 2 claims Ishkhanian was constructively discharged as a result of ongoing sexual harassment. Count 3 alleges that defendants retaliated against Ishkhanian's filing of a Title VII claim by bringing a civil action against her for fraud, conversion, theft, and breach of contract. Counts 4 through 7 assert claims of assault and battery against Tcheupdjian. Counts 8 and 9 claim assault and battery against LCS based on

Tcheupdjian's conduct. Counts 10 and 11 allege defamation against Tcheupdjian and LCS. Count 12 claims negligent retention based on LCS's alleged failure to use reasonable care in retaining Tcheupdjian. Counts 13 and 14 claim, respectively, breach of an oral contract and violations of the Illinois Wage Payment and Collection Act.

Defendants moved to dismiss Counts 1-4 and 7-12 of the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court denied the motion on its face except with respect to Counts 3, 8, 9 and 12, which we ordered the parties to brief. We address these claims in this order.

## Discussion

In reviewing a motion to dismiss for failure to state a claim, the court must take the complaint's allegations as true and draw reasonable inferences in the plaintiff's favor. *E.g., Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). Ishkhanian's complaint cannot be dismissed "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### 1. Count 3

Count 3 of Ishkhanian's complaint alleges retaliation by defendants Tcheupdjian and Forrester in violation of Title VII of the Civil Rights Act of 1964. Approximately six months after Ishkhanian filed a charge of discrimination with the EEOC and a year after her resignation, LCS sued her in state court for fraud, theft, breach of oral contract and conversion. Ishkhanian claims that the civil suit was filed in retaliation for complaint of discrimination, in violation of Title VII's anti-retaliation provision. LCS argues that Title VII does not permit retaliation claims based on actions taken against former employees.

2

Title VII makes it illegal for an employer to retaliate against an employee for making a complaint of discrimination. 42 U.S.C. §2000e-3(a). In *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997), the Supreme Court upheld an expansive reading of the term "employee" in the statute, finding that former employees are also protected from retaliatory actions by employers. LCS argues, however, that post-termination retaliation is actionable only if it adversely affects the plaintiff's employment opportunities or has a nexus to employment.

In *Veprinsky v. Flour Daniel*, 87 F.3d 881 (7th Cir. 1996), a pre-*Robinson* decision, the Seventh Circuit held that an employee can sue for retaliation under Title VII based on post-termination acts "that impinge[ ] on their future employment prospects or otherwise [have] a nexus to employment." *Id.* at 891. LCS argues that its filing of a civil suit against Ishkhanian does not meet the *Veprinsky* test.

Even if *Veprinsky* were read to require impact on job prospects or a nexus to employment as a prerequisite to a post-termination retaliation claim, dismissal of Ishkhanian's claim would be improper, as we are cannot say (as we would have to in order to grant the motion to dismiss) that being sued civilly for fraud could not possibly have an impact on Ishkhanian's employment prospects. But in fact *Veprinsky* does not squarely hold that a nexus to employment is always required. Furthermore, the Seventh Circuit's subsequent decisions suggest that no such requirement exists. In *Aviles v. Cornell Forge Co.*, 183 F.3d 598 (7th Cir. 1999), the Seventh Circuit emphasized that an employee's pre-termination, retaliation claim need not be based on actions that "take the form of a job action." *Id.* at 605. The court noted that non job-related retaliatory actions by employers may have the effect of hindering employees from filing Title VII charges. *Id.* More recently, in *Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742 (7th Cir. 2002), the Seventh Circuit held that retaliation claims do not require the plaintiff to establish

3

that there was an adverse employment action, observing that "the provision regarding retaliation may intentionally be broader, since it is obvious that effective retaliation against employment discrimination need not take the form of a job action." *Id.* at 745 (citing *McDonnell v. Cisneros*, 84 F.3d 256, 259 (7th Cir. 1996)).

Moreover, permitting claims of retaliation based on post-termination events irrespective of whether those events have a nexus to the plaintiff's employment furthers the purpose of the anti-retaliation provision in Title VII. In *Robinson*, the Supreme Court concluded that §704(a) pertained to former employees because the "primary purpose" of the provision was to "[maintain] unfettered access to statutory remedial mechanisms." *Robinson*, 519 U.S. at 346. "The individuals most likely to oppose unlawful discharges, and to file charges seeking relief, are the discharged employees themselves." *Veprinsky*, 87 F.3d at 890. Allowing discharged (and constructively discharged) employees to sue for retaliation based on post-termination events removes possible impediments to the discharged employee's access to Title VII's remedial mechanisms and provides a deterrent to employers who may want to interfere with the employee's pursuit of a Title VII claim.

Finally, LCS argues that an exercise of its right to bring a civil suit cannot be deemed retaliation under the law. The standard to distinguish between inconsequential acts of retaliation and those which are sufficient under Title VII remains uncertain. However, in this case, comparison to what constitutes an adverse employment action may aid in determining whether an employer's conduct is retaliatory. In *Berry v. Stevinson Chevrolet*, 74 F.3d 980 (10th Cir. 1996), the Tenth Circuit held that criminal theft and forgery charges instigated by the employer constituted adverse action and have rise to a valid claim of retaliation. *Id.* at 986-88. *See Herrnreiter*, 315 F.3d at 745 (citing *Berry* with approval). The court viewed the charges of fraud

and theft as significant because of the public humiliation, damage to reputation, and potential harm to future employment prospects. *Id.* at 986. In this case, Ishkhanian faced civil claims that risked damaging her reputation and affecting adversely her prospects for future employment. In addition, the economic impact of being sued civilly could also be considered a having a significant chilling effect on filing or continuing to pursue charges with the EEOC. For these reasons, we cannot say that LCS' filing of a civil suit fails to constitute retaliation as a matter of law.

In sum, Ishkhanian has satisfied the pleading requirements of the Federal Rules by alleging that she had engaged in a protected activity and was retaliated against by LCS, her former employer, for that activity.

### 2. Counts 8 and 9

In Counts 8 and 9, Ishkhanian asserts claims of battery and assault against LCS, alleging that on two separate occasions Tcheupdjian intentionally and willfully accosted her and caused her great fear and apprehension of offensive bodily contact. In the amended complaint, Ishkhanian alleges that Tcheupdjian acted within the scope of his employment, thus rendering LCS liable under the doctrine of *respondeat superior*. LCS argues that these claims should be dismissed since Tcheupdjian's alleged sexual misconduct was "not in furtherance of LCS's business, [was] beyond the scope of any employment duties, and do not create *respondeat superior* liability." Defendant's Motion to Dismiss, p. 10.

In response, Ishkhanian does not argue the *respondeat superior* theory and thus has essentially conceded the point. She argues, however, that LCS may be held liable for Tcheupdjian's actions on an alter ego theory based on the complaint's allegations involving his ownership and control of LCS. The Illinois Supreme Court has recognized a common law cause

5

of action against an employer for situations in which an alter ego of the employer intentionally inflicts injuries upon an employee. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 464, 564 N.E.2d 1222, 1226 (1990); *see also Torreto v. I.B. Diffusion L.P.*, No. 92 C 2758, 1995 WL 767315 (N.D. Ill. Dec. 26, 1995). Ishkhanian's complaint contains allegations sufficient to state a claim against LCS on an alter ego theory. She alleges that Tcheupdjian is the owner and a principal in the company. She also claims that he said, "I am the king, if anything happens to me, you, you everyone will be out of a job, you are nothing without me." Second Am. Cplt. ¶¶8, 18. In instances where a corporation's authorities and powers are delegated to managers, "managers may act as alter egos of the corporate entity." *Feliciano v. Jerry's Fruit & Garden Center, Inc.*, No. 93 C 5911, 1994 WL 142963, *3 (N.D. Ill. Apr. 15, 1994). Ishkhanian's allegations are sufficient to state a claim against LCS.

Defendants argue that in Illinois, corporations are distinct legal entities, separate from their shareholders, officers and directors. *In re Estate of Wallen*, 262 Ill. App. 3d 61, 68, 633 N.E.2d 1350, 1357 (1994). According to the defendants, to "pierce the corporate veil," the plaintiff must make a "substantial showing" that an individual is truly the alter ego of the corporation. *Id.* However, in order for the claim to withstand a motion to dismiss for failure to state a claim in federal court, no "substantial showing" of fact is demanded.

### 3. Count 12

In Count 12, Ishkhanian asserts a claim of negligent retention against LCS for breaching its duty of reasonable care by keeping Tcheupdjian on the payroll despite knowledge of prior acts of assault and battery he is claimed to have committed. LCS argues that this claim is preempted by the Illinois Human Rights Act. The IHRA precludes state common law tort claims by an employee that are "inextricably linked" to an employment discrimination claim. 775 ILCS

5/8-111 (C). *Kacprowski v. Advanced Reproductive Health Ctr.*, No. 00 C 7884, 2001 WL 717483 (N.D. Ill. June 22, 2001); *see also Jaslowski v. Cellco Partnership*, No. 02 C 3601, 2002 WL 31085092 (N.D. Ill. Sept. 17, 2002). Specifically, "common law claims are preempted if they are based entirely upon legal obligations and prohibitions that exist as a matter of Illinois law only under [the IHRA] and have no other independent foundation." *Bartoli v. Applebee's Restaurant*, N. 00 C 5954, 2001 WL 40798, *2 (N.D. Ill. Jan 17, 2001). However, the IHRA was not intended to preempt all common law actions simply because they may be factually related to sexual harassment or prohibited discrimination. *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 518, 687 N.E.2d 21, 23 (1997).

In this case, Ishkhanian's claim for negligent retention does not rely entirely on rights established by the IHRA, but is instead predicated on an independent common law duty to protect an employee from assault and battery. Even though the assault and battery might also be part of a claim of sexual harassment, the claim has a foundation separate from the IHRA and thus is not preempted.

## Conclusion

For the reasons stated above, the Court denies defendants' motion to dismiss Counts 3, 8, 9, and 12. Defendants are ordered to answer those claims within 7 days of this order.

---
MATTHEW F. KENNELLY
United States District Judge

Date: June 25, 2003